IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MORTON GROVE )
PHARMACEUTICALS, INC. )
)
) No. 04 C 7007
Plaintiff and )
Counterdefendant, ) Judge Ronald A. Guzman
)
) Magistrate Judge
vs. ) Arlander Keys
)
PHARMACEUTICAL RESOURCES, )
INC. and PAR PHARMACEUTICAL, )
INC. )
)
Defendants and )
Counterplaintiffs. )

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Morton Grove Pharmaceutical's ("MGP") Motion to Compel documents. MGP argues that Defendants Pharmaceutical Resources, Inc. and Par Pharmaceuticals, Inc. (collectively "Par") should be compelled to produce documents given to a consultant with Charles River Associate's Inc. ("CRA"), as well as certain third-party license documents. For the reasons set forth below, MGP's Motion is granted.

## Background Facts

On April 5, 2005, Par retained CRA to assist in assessing damages in the present litigation[1]. In the retainer agreement, the parties agreed that "Dr. Gordon Rausser will be the

---

[1] According to the testimony of CRA consultant Dr. Gordon Rausser, however, Dr. Rausser had been working on the matter since at least January of 2005. Rausser Dep at p. 20.

testifying expert. He will use the staff of CRA, if necessary, to support his assignment and any testimony that is required." At his deposition, Dr. Rausser testified that support from the staff of CRA was, in fact, necessary. Of particular relevance was the role of CRA employee Ann McDermott. Ms. McDermott was the project manager for this task, Rausser Dep at p. 16, was responsible for communicating with counsel, Rausser Dep. at p. 22, and ultimately drafted portions of Dr. Rausser's expert report. Rausser Dep. at p. 67.

Although Judge Guzman's Order required Par to disclose its damages position by May 14, 2005, Par waited more than one week to do so. On May 24, 2005, counsel for Par sent a letter to MGP responding to MGP's interrogatories concerning damages. Par explained that "Par will seek recovery of its damages based on its lost profits as well as for a reasonable royalty," but that the results are preliminary. Par further noted that its reasonable royalty analysis was preliminary, because MGP had purportedly not yet provided Par with sufficient information to make a full assessment. Based on the information then available, Par estimated that its damages would be in excess of $3 million.

In preparing Par's response, Par's counsel consulted with Ann McDermott and forwarded her a draft of the May 24th letter. Ms. McDermott made edits to the draft and forwarded Par's counsel

a red-lined version of the document[2]. Counsel incorporated many of Ms. McDermott's edits to the damages calculations and figures into the final version of the May 24th letter sent to MGP.

Par's counsel forwarded a further draft of the contentions letter to Ms. McDermott on May 25, 2005. The two discussed the draft briefly, and counsel decided not to send this letter to MGP[3].

On June 17, 2005, Par sent a letter to MGP revising its earlier damages contentions. Par's most recent analysis of its lost profits damages was significantly lower than its previous estimate. Par's counsel did not consult Ms. McDermott in preparing the June 17th letter, though Dr. Rausser did review and comment on the final draft of this letter.

In the interim, Dr. Rausser and his staff, including Ms. McDermott, were working on preparing the expert report. Although the team had been working on the report prior to May of 2005, the majority of the work performed for Par occurred in May through mid-July of 2005. Rausser Dep at pp. 20-21. Dr. Rausser explained that he "outlined the report and discussed it with staff, in particular with Ms. McDermott and Mr. Kyle, drafted some of the sections, and some of the sections were drafted by Mr. Kyle and Ms. McDermott." Rausser Dep. at p 67. This report,

---

[2] This draft is logged as Entry 1 on CRA's privilege log.

[3] This draft is logged as Entry 2 on CRA's privilege log.

3

dated July 21, 2005, identified damages far in excess of those indicated in Par's May 24, 2005 damages contentions forwarded to MGP's counsel. Specifically, Dr. Rausser claims that Par is entitled to over $13 million dollars in damages, including a $2.4 million dollar lump sum upfront royalty payment. Notably, Par's prior two damages contentions never claimed entitled to a lump sum, upfront royalty payment.

## Discussion

MGP claims that it has been prejudiced by Dr. Rausser's expert report, because it was untimely and asserts previously unidentified theories of recovery. MGP seeks to discover all materials informing Dr. Rausser's report, including the May 24 and May 25, 2005 damages contentions' drafts edited by Ms. McDermott, and third-party licensing agreements that Dr. Rausser purportedly relied upon to refute MGP's expert's opinion regarding the applicable royalty rate.

Par argues that MGP is not entitled to the drafts of its damages contentions, because these were forwarded not to Dr. Rausser (the testifying expert), but instead to Ms. McDermott. Par claims that Ms. McDermott evaluated these contentions in an independent role as a consulting expert to Par, and not in her role as the project manager assisting Dr. Rausser. In addition, Par claims that the third-party licensing agreements that MGP seeks are wholly irrelevant to the litigation at hand and that

Dr. Rausser did not, in fact, rely upon them in compiling his report. The Court will address each argument in turn.

## A. MGP is Entitled to Both of the Damages Contentions' Drafts

Both parties agree that communications between an attorney and a testifying expert are fully discoverable and cannot be withheld from production based upon a claim of work-product. See, e.g., Chamberlain Group, Inc. v. Interlogix, Inc., No. 01 C 6157, 2002 WL 653893, at *3 (N.D. Ill. April 19, 2002)("an attorney's mental impressions communicated to a Rule 26(a)(2) expert are not protected by the work-product doctrine."); Commonwealth Ins. Co. v. Stone Container Corp., 178 F. Supp.2d 938, 944 (N.D. Ill. 2001) ("communications between a testifying expert and the party retaining that expert are not privileged.")

Par claims that this general rule does not warrant the disclosure of the two damages contentions' drafts, because it never forwarded the documents to Dr. Rausser, the designated testifying expert. Instead, Par forwarded the drafts only to Ann McDermott, and only in her capacity as a consulting expert. Par asserts that it hired Ann McDermott – who was also acting as Dr. Rausser's project manager -- as a consulting expert. Because Ms. McDermott reviewed and edited the documents only in her capacity as a consulting expert, Par argues, Par is not required to produce the documents. See Braun v. Lorillard Inc. 84 F.3d 230, 236 (7th Cir. 1996) (ruling that, absent exceptional

5

circumstances, work product reviewed by a non-testifying expert is not discoverable.)

Par notes that Rule 26(b)(4)(B) allows for the discovery on a nontestifying expert "who has been retained or specially employed by another party in anticipation of litigation or preparation for trial" only upon "a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain the facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(B). Because MGP has failed to demonstrate such circumstances exist in the instant case, Par argues, the May 24 and May 25, 2005 drafts should remain protected.

MGP attacks Par's position on both factual and legal grounds. First, MGP points to compelling evidence rebutting Par's and Ms. McDermott's assertions that Par had hired Ms. McDermott as a consulting expert. Unlike the retaining agreement securing Dr. Rausser's services, Par has been unable to produce an agreement memorializing Ms. McDermott's role as a consulting expert. Ms. McDermott's time entries neither identify Ms. McDermott as a consulting expert, nor attempt to segregate the time she spent working as Dr. Rausser's project manager and the time she worked as a consulting expert. In addition, Par failed to disclose Ms. McDermott as a consulting witness, permitted to review confidential information, by having her sign the parties'

Declaration, as required by the Protective Order in this case.

MGP's legal arguments concerning testifying expert witnesses who wear two hats are even more persuasive. Pursuant to Rule 26, "the data or other information *considered* by the [testifying expert] witness in formulating the opinions" is discoverable. Fed. R. Civ. P. 26(a)(2). In general, an expert who reviews or reads materials before rendering his opinion -- regardless of the capacity in which he reads them -- is deemed to have "considered" those materials for purposes of Rule26(a)(2)(B). *Western Resources, Inc. v. Union Pac. R.R.*, No. 00-2043-CM, 2002 WL 181494, at *9 (D. Kan. Jan. 31, 2002); *see also Cornell Research Foundation, Inc. v. Hewlett Packard Co.*, 223 F.R.D. 55, 78-79 (N.D.N.Y. 2003).

For example, in *Western Resources, Inc.*, Mr. Crowley's role in the litigation evolved from consultant to testifying expert over a period of almost a decade. The plaintiff moved to compel discovery of the materials that Mr. Crowley had written or reviewed while employed as a consultant. The court rejected the defendant's argument that the materials were protected work product, because Mr. Crowley did not actually consider the information sought in his role as an expert, finding instead that an expert is deemed to have considered materials for Rule 26(a)(2)(B) purposes if the expert has "read or reviewed the privileged materials before or in connection with formulating his

7

or her opinion." *Western Resources*, 2002 WL 181494, at *9.

Next the *Western Resources* defendant argued that the materials that Mr. Crowley had reviewed as a consultant were very different and factually unrelated to the information contained in the expert report, and, therefore, should not be discoverable. The court concluded that, while those documents "having no relation to the expert's role as an expert" need not be disclosed, "'any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery.'" *Id.*, at *11, quoting *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co.*, 171 F.R.D. 57, 63 (S.D.N.Y. 1997).

In general, any ambiguity as to the capacity in which the expert considered a particular document, or whether the expert even "considered" a document in formulating his opinion at all, should be resolved in favor of disclosure. *See, e.g., B.C.F. Oil Refining, Inc.*, 171 F.R.D. at 63. (compelling the production of documents where it was not clear whether the expert had reviewed them "solely as a consultant or whether they informed his expert opinion as well."); *Cornell Research Foundation, Inc.*, 223 F.R.D. at 78-79 (ordering production of a document where it was impossible to compartmentalize the role in which the expert considered a document.)

Par does not argue with this reasoning, but instead claims

8

that the cases MGP cites are readily distinguishable, because all of these cases concern one witness who acted as both a testifying expert witness and in another capacity that would not have otherwise compelled the disclosure of work product. Conversely, Par argues, Ms. McDermott is not the testifying witness -- Dr. Rausser is - and her dual role as consulting expert and project manager does not trigger Rule 26(b)(2)(B)'s disclosure requirements.

The Court disagrees with Par's attempt to split hairs. Par has not cited to, nor has this Court discovered, any authority suggesting that materials supplied only to a member of a testifying expert's staff, as opposed to the testifying expert himself, need not be disclosed pursuant to Rule 26(b)(2)(B). Moreover, the evidence is clear that Ms. McDermott not only assisted Dr. Rausser in formulating his expert opinion, but that she also drafted substantial portions of the expert report. While Ms. McDermott may not be taking the stand, Par clearly intends to rely on the report that she, in part, authored, and it is entirely unclear as to the extent to which the May 24th and 25th communication may have influenced the assistance she provided to Dr. Rausser, albiet unconsciously. For all practical purposes, Ms. McDermott's views will be presented to the jury (should there be one) and she is, therefore, the equivalent of the testifying witness. The Court notes that it "must apply the

work product doctrine 'in a commonsense manner and in light of reason and experience determined on a case by case basis.'" *Monsanto Co. v. Aventis Cropscience, N.V.*, 214 F.R.D. 545, 549 (E.D. Missouri 2002) (quoting *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997)). It will not permit the feeble distinction that Par seeks to impose.

This Court's conclusion is consistent with and furthers Rule 26(b)(2)(B)'s intent. Rule 26(b)(2)(B) requires the disclosure of materials and communications between counsel and a testifying expert, because "[g]iven the importance that expert testimony can assume, 'a jury is entitled to know everything that influenced an expert's opinion in order to assess his credibility,' including legal theories or conclusions about a case that an attorney has shared that may have shaped the expert's opinion." *Constr. Indus. Servs. Corp. v. Hanover Ins. Co.*, 206 F.R.D. 43, 51 (E.D.N.Y. 2001) (quoting *Barna v. United States*, No. 95 C 6552, 1997 WL 417847 at *2 (N.D. Ill. July 28, 1997)). "Without this form of discovery, expert testimony may become another way in which counsel places his view of the case or the evidence in front of the jury. The real danger is that this view, when espoused by an expert, is presented to the jury with an air of authority and a stamp of scientific validity, and opposing counsel might be left without a solid basis for cross-examination." *Barna*, 1997 WL 417847 at *2.

## B. Par Must Produce the Licensing Agreements

MGP argues that 400 licensing agreements that Dr. Rausser reviewed in another matter, which the Court will refer to as the Roxanne matter, are clearly relevant to the instant case and should be produced. Specifically, during Dr. Rausser's deposition in this case, Dr. Rausser stated that the flaw in MGP's expert's opinion was that the data MGP's expert considered in establishing a reasonable royalty rate did not include any licensing agreements between direct competitors in the same marketplace. MGP notes that Dr. Rausser made nearly the identical critique in his rebuttal report in the Roxanne matter. In the Roxanne matter, Dr. Rausser claimed that the opposing side's expert erred in assessing the reasonable royalty rate, because none of the data included "licenses to allow head to head competition between licensor and licensee."

The Court acknowledges that Dr. Rausser does not specifically mention the 400 licensing agreements from the Roxanne matter in connection with his expert opinion in this case. However, Dr. Rausser's deposition testimony clearly implies that he, unlike MGP's expert, reviewed licensing agreements to establish a reasonable royalty rate. As Dr. Rausser makes no mention of the licensing agreements that he did review, there is an inference that he was, in fact, referring to the licensing agreements referenced in the Roxanne matter. And

11

given the broad discovery contemplated by Rule 26, the Court cannot conclude that the licensing agreements are irrelevant in this case. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)("relevancy has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."); *Hahn v. Village of Downers Grove*, No. 98C 7281, 1999 WL 350861, at *4 (N.D. Ill. May 26, 1999)("Because the Federal Rules contemplate liberal discovery, 'relevancy' for Rule 26 purposes is extremely broad.")

Notably, when MGP first requested the documents, counsel for Par agreed to produce them. MGP asserts that Par's agreement was straightforward: Par allegedly agreed that the documents were relevant and responsive to MGP's requests, and that it wasn't worth his client's money to fight over them. Remarkably, Par asserts that it conditioned the production of the licensing agreement upon MGP's agreement to not file its Motion to Compel. Clearly, Par's burden in identifying and producing the documents will be manageable. Under these circumstances, the Court grants MGP's Motion to Compel.

## Conclusion

For the reasons stated above, the Court finds that Par must disclose the May 24 and May 25, 2005 communications between counsel and Ms. McDermott. If Par wanted to engage the services

12

of a consulting expert, with the privacy afforded to communications with such experts, it could have easily done so by hiring a consulting expert who was truly independent of its testifying expert. *See Beverage Marketing v. Ogilvy & Mather Direct Response, Inc.*, 563 F. Supp. 1013, 1014 (S.D.N.Y. 1983) (when a testifying expert wears two hats "it might be possible to claim a work product privilege if this delineation were clearly made.") Similarly, MGP has made a sufficient showing that, under the broad discovery contemplated by the Federal Rules, Par should produce the 400 licensing agreements. It is so ordered.

Therefore, Plaintiff's Motion to Compel is Granted.

DATED: December 21, 2005      E N T E R E D:

*[signature: Arlander Keys]*
Arlander Keys
United States Magistrate Judge